Marc Zemel
Meredith A. Crafton
Savannah Rose
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TWIN HARBORS WATERKEEPER,      )
                               )
                Plaintiff,     )
                               )
v.                             )          COMPLAINT
                               )
ROGNLIN'S, INC. (EQUIPMENT     )
SHOP),                         )
                               )
                Defendant.     )
                               )
_____

## I.    INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Twin Harbors Waterkeeper ("Twin Harbors"), seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendant Rognlin's Inc.'s repeated and ongoing violations of the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing certain stormwater discharges of

COMPLAINT - 1

pollutants from Rognlin's Inc.'s Equipment and Maintenance Shop (Equipment Shop) facility (hereafter "the Equipment Shop facility") in Aberdeen, Washington to navigable waters.

## II.    JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over Twin Harbors' claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Twin Harbors requests.

3.      Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Twin Harbors notified Rognlin's Inc. of its violations of the CWA and of Twin Harbors' intent to sue under the CWA via letter postmarked June 2, 2023 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Twin Harbors notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue Rognlin's Inc. by mailing copies of the Notice Letters to these individuals on June 2, 2023.

4.      At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.      The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

6.      At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

COMPLAINT - 2

7.     The source of the violations complained of is in Grays Harbor County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

### III.     PARTIES

8.     Twin Harbors is suing on behalf of itself and its members.

9.     Twin Harbors is a non-profit corporation organized under the laws of the state of Washington. Twin Harbors is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Twin Harbors is a membership organization and has at least one member who is injured by Rognlin's, Inc.'s violations.

10.     Twin Harbors has representational standing to bring this action. Twin Harbors' members are reasonably concerned about the effects of discharges of pollutants, including stormwater the Equipment Shop facility, on water quality and aquatic species and wildlife that Twin Harbors' members observe, study, use, and enjoy. Twin Harbors' members are further concerned about the effects of discharges from the Equipment shop facility on human health. In addition, discharges from the Equipment shop facility lessen Twin Harbors' members' aesthetic enjoyment of nearby areas. Twin Harbors has members who live, work, fish, and recreate around or use the Chehalis River which is affected by Rognlin's, Inc.'s discharges. Twin Harbors' members' concerns about the effects of Rognlin's Inc.'s discharges are aggravated by Rognlin's, Inc.'s failure to record and timely report information about its discharges and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interest of Twin Harbors and its members have been, are being, and will be adversely affected by Rognlin's, Inc.'s violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

COMPLAINT - 3

11. Twin Harbors has organizational standing to bring this action. Twin Harbors has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of Western Washington, including the Chehalis River. As detailed herein and in the Notice Letter, Rognlin's, Inc. has failed to comply with numerous requirements of its NPDES permit including compliance with water quality standards, Stormwater Pollution Prevention Plan maintenance, monitoring, recordkeeping, and permit violation reporting requirements. As a result, Twin Harbors is deprived of information necessary to properly serve its members by providing information and taking appropriate action to advance its mission. Twin Harbors' efforts to educate and advocate for greater environmental protection, and to ensure the success of environmental restoration projects implemented for the benefit of its members are also obstructed. Finally, Twin Harbors and the public are deprived of information that influences members of the public to become members of Twin Harbors, thereby reducing Twin Harbors' membership numbers. Thus, Twin Harbors' organizational interests have been adversely affected by Rognlin's, Inc.'s violations. These injuries are fairly traceable to Rognlin's, Inc.'s violations and are redressable by the Court.

12. Rognlin's Inc. is a corporation authorized to conduct business under the laws of the state of Washington.

13. Rognlin's Inc. owns and operates an approximately ten-acre Equipment and Maintenance Shop that includes support activities such as equipment staging yards, material storage areas, and borrow areas. This area is made up of multiple lots and is bordered by the Chehalis River, Chehalis River Bridge, West State Street, and South K Street. Rognlin's, Inc. conducts industrial activities here that Ecology has determined to align most with Transportation with Maintenance and Marine Contractors and is located at or about 100 East River Street, Aberdeen, WA 98520 (referred to herein as the "Equipment Shop facility").

COMPLAINT - 4

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

14. Rognlin's owns a separate facility, Rognlin's Inc.'s Concrete and Asphalt ("C&A") facility, subject of a separate lawsuit. This facility is also in Aberdeen, WA but is at different location and subject to a different NPDES permit.

### IV.    LEGAL BACKGROUND

15.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.

16.    The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

17.    Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued iterations of the Industrial Stormwater General Permit, most recently on November 20, 2019, effective January 1, 2020, and set to expire December 31, 2024 (the "Permit"). The Permit authorizes those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

18.    The Permit imposes certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permit requires, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention,

COMPLAINT - 5

1    control, and treatment ("AKART") to discharges. The specific terms and conditions of the

2    Permit is described in detail in the Notice Letter, attached hereto as <u>Exhibit 1</u> and incorporated

3    herein by this reference.

### V.    FACTS

5    19.    Ecology granted Rognlin's, Inc. coverage for the facility under the Permit under

6    Permit Number WAR311781.

7    20.    The Equipment Shop facility discharges stormwater and pollutants associated

8    with industrial activity to the Chehalis River.

9    21.    Rognlin's, Inc. is engaged in industrial activities at the Equipment Shop facility

10   including equipment storage and equipment maintenance, among others. The Equipment Shop

11   facility has multiple distinct points of discharge where stormwater and other pollutants leave the

12   facility and eventually enter the Chehalis River.

13   22.    Rognlin's, Inc. has violated and continues to violate the "effluent limitations and

14   standards" under the CWA by violating its NPDES Permit. 33 U.S.C. 1365(a)(1) and (f)(7).

15   Rognlin's, Inc.'s violations of the Permit are set forth in sections I through V of the Notice Letter

16   attached hereto as <u>Exhibit 1</u> and are incorporated herein by this reference. In particular, and

17   among the other violations described in the Notice letter, Rognlin's, Inc. has violated the Permit

18   by failing to comply with water quality standards, failing to comply with AKART standards,

19   failing to implement BMPs to control water quality, failing to implement corrective actions,

20   failing to establish and implement an adequate SWPPP, failing to collect quarterly samples,

21   failing to correctly and timely submit Discharge Monitoring Reports ("DMRs"), failing to

22   correctly submit Annual Reports, failing comply with visual monitoring requirements, failing to

23   record information, failing to retain records, failing to report permit violations, failing to timely

24   provide a SWPPP when requested, and failing to include its entire facility in its Permit coverage.

COMPLAINT - 6

23.     Rognlin's, Inc. discharges stormwater from the Equipment Shop facility containing levels of pollutants that exceed the benchmark values established by the Permit and is likely to continue discharging comparable levels of pollutants in its stormwater.

24.     Rognlin's, Inc. discharges stormwater containing levels of pollutants that exceed the benchmark values established by the Permit, including the days on which Rognlin's, Inc. collected samples including a turbidity sample of 29 NTU during the first quarter 2023, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater.

25.     Rognlin's, Inc.'s stormwater discharges are causing or contributing to violations of water quality standards and therefore violate Permit Condition S10.A. Discharges from the Equipment Shop facility contribute to the polluted conditions of the waters of the state, including the water quality standards of the Chehalis River. Discharges from the Equipment Shop facility contribute to the ecological impacts that result from the pollution of these waters and to Twin Harbors and its members' injuries resulting therefrom. These requirements and Rognlin's, Inc.'s violations thereof are described in detail in section I.A of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

26.     Condition S10.C of the Permits requires the Rognlin's, Inc. Equipment Shop to apply AKART to all discharges, including preparation and implementation of an adequate SWPPP and BMPs. Rognlin's, Inc.'s exceedances of the benchmark values and observable failures to implement means to prevent polluted discharges beyond acceptable levels indicate that Rognlin's, Inc. is failing to apply AKART to its discharges and/or is failing to implement an adequate SWPPP and BMPs at its Equipment Shop facility. Rognlin's, Inc. violated and continues to violate Permit Conditions S10 and S3 by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permit, and/or by not applying AKART to discharges from the facility. Some examples observed by Twin Harbors during a site

COMPLAINT - 7

visit on June 22, 2023 and as evidenced by the facility's site map and photographic evidence, include:

    a.  Failure to prevent turbid runoff from contaminating the surrounding area;

    b.  Failure to control all on-site sources of dust and prevent track out;

    c.  Failure to prevent debris from contaminating the surrounding area;

    d.  Failure to prevent erosion and stabilize exposed soils on-site resulting in rills at the facility;

    e.  Failure to maintain the unpaved yard, such as adding a new layer of crushed rock or paving the yard;

    f.  Storing materials such as scrap metal, creosote logs, and leaking equipment outside without berming or a cover.

These AKART, BMP and SWPPP requirements and Rognlin's, Inc.'s violations thereof are described in detail in section I.B and section II of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference.

       27.    Condition S3.A of the Permits requires Rognlin's, Inc. to have and implement a SWPPP that is consistent with Permit requirements, fully implemented as directed by Permit conditions, and updated as necessary to maintain compliance with Permit conditions. Rognlin's, Inc. has violated these requirements of the Permit each and every day for the last five years and continues to violate them because its SWPPP is not consistent with Permit requirements. For example, Rognlin's, Inc.'s SWPPP does not adequately describe the Equipment Shop facility, fails to include all parts of the facility (such as the significant equipment storage area bordered by the Chehalis River), fails to include all activities and necessary BMPs, has not been fully implemented, and has not been updated as necessary. These requirements are described in detail in section II of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference.

COMPLAINT - 8

28.     Rognlin's, Inc. has violated and continues to violate Permit Condition S3.B of the Permit by discharging process wastewater from its vehicle wash area to the stormwater drain, as observed by Twin Harbors during its site visit on June 22, 2023. These violations are reasonably likely to recur.

29.     Rognlin's, Inc. has violated and continues to violate the monitoring requirements of Permit Conditions S4, S7, and S9. Permit Condition S4.B requires Rognlin's, Inc. to sample its stormwater discharges once during every calendar quarter at each distinct point of discharge offsite except for substantially identical outfalls. However, Rognlin's Inc. has failed and is failing to monitor discharges from multiple distinct points of discharge. Instead, the stormwater monitoring results that Rognlin's, Inc. submits to Ecology fail to contain sample results for each distinct point of the Equipment Shop facility's stormwater discharges. Rognlin's, Inc. has also failed to collect and analyze stormwater samples in accordance with Permit Condition S4.A at both Monitoring Point 1 and 2 for each and every quarter. Rognlin's, Inc. is falsely reporting "no discharge" on each and every DMR for samples from the facility, despite reportedly sending in a stormwater sample to a lab for analysis in the first quarter of 2023. Further, Rognlin's, Inc. has failed to monitor or prevent discharges from its equipment area bordered by the Chehalis River. Rognlin's, Inc. failed to submit DMRs by the prescribed deadline for the fourth quarter 2022, first quarter 2023, and second quarter of 2023. Rognlin's, Inc. failed to comply with visual monitoring requirements required by Permit Condition S7 by failing to conduct Industrial Stormwater Monthly Inspection Reports by qualified personnel every month form at least September 2022 through December 2022. Rognlin's, Inc. failed to submit an Annual Report for 2022 for its facility by the prescribed deadline of May 15 of the following year, as required by Permit Condition S9. These DMR submittals, Annual Report submittals, and monitoring and inspection requirements and Rognlin's, Inc.'s violations thereof are described in section III of the

COMPLAINT - 9

Notice Letter, attached hereto as <u>Exhibit 1</u>, and incorporated herein by this reference. All these violations are reasonably likely to recur.

30.     Rognlin's, Inc. triggered Level One Corrective Action requirements for turbidity during first quarter 2023. Rognlin's, Inc. has violated the requirements of Permit Condition S8.B by failing to conduct Level One Corrective Action requirements in accordance with the Permit's conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required implementation of additional BMPs; and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark. These violations are reasonably likely to recur.

31.     Rognlin's, Inc. has failed and continues to fail to comply with recording requirements of Permit Condition S4.B. Rognlin's, Inc. does not record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Rognlin's, Inc. collected the sample within the first 30 minutes of stormwater discharge event, an explanation of why Rognlin's, Inc. could not collect a sample within the first 30 minutes of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling, as required by the Permit condition. These requirements and Rognlin's, Inc.'s violations thereof are described in section IV.A of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

32.     Rognlin's, Inc. has failed and continues to fail to comply with record keeping requirements of Permit Condition S9.D. Rognlin's, Inc. does not retain for a minimum of five years a copy of the current Permit, a copy of Rognlin's, Inc. Equipment Shop's coverage letter, records of all sampling information, inspection reports including required documentation, any

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit, as required by the Permit conditions. These requirements and Rognlin's, Inc.'s violations thereof are described in section IV.B of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

33.   Condition S9.F of the Permit requires Rognlin's, Inc. to take certain actions, including reporting to Ecology, in the event Rognlin's Inc. is unable to comply with any terms and conditions of the Permit which may endanger human health or the environment. Rognlin's, Inc. has failed to comply with these requirements of the Permit by failing to report and subsequently correct permit violations, including each and every time Rognlin's Inc. failed to sample a stormwater discharge at its facility, discharges of stormwater with an amount of pollutants in excess of the Permit benchmarks, and discharges process wastewater to the stormdrain as described above in paragraphs 24, 30, and 31 above.

34.   Rognlin's, Inc. failed to provide Twin Harbors a copy of its SWPPP within fourteen days of Twin Harbors' request contained in the Notice Letter, as required by Permit Condition G.

## VI.   CAUSES OF ACTION

35.   The preceding paragraphs and the allegations in the Notice Letter attached hereto as <u>Exhibit 1</u> are incorporated herein.

36.   Rognlin's, Inc.'s violations of the Permit described herein and in the Notice Letter constitute violations of "effluent standards or limitations" under the CWA per 33 U.S.C. § 1365(a)(1) and (f)(7).

COMPLAINT - 11

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

37.     No agency has taken an enforcement action constitution diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

38.     Prior notice of violations and claims was provided to Rognlin's, Inc. and others as required.

39.     These violations committed by Rognlin's, Inc. are ongoing or are reasonably likely to continue to occur. Any and all additional violations of the Permit and the CWA which occur after those described in Twin Harbors' Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

40.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Rognlin's, Inc. is likely to continue to violate the Permit and the CWA to the further injury of Twin Harbors, its members, and others.

## VII.    RELIEF REQUESTED

Wherefore, Twin Harbors respectfully requests that this Court grant the following relief:

A.      Issue a declaratory judgment that Rognlin's, Inc. has violated and continues to be in violation of the Permit and the CWA;

B.      Enjoin Rognlin's, Inc. from operating the Equipment Shop facility in a manner that results in further violations of the Permit and the CWA;

C.      Order Rognlin's, Inc. to immediately implement a SWPPP that complies with the 2020 ISGP Permit at the facility;

D.      Order Rognlin's, Inc. to allow Twin Harbors to participate in the development and implementation of Rognlin's, Inc.'s SWPPP and compliance plan;

E.      Order Rognlin's, Inc. to provide Twin Harbors, for a period beginning on the date of the Court's Order and running for three years after Rognlin's, Inc. achieves compliance with all of the conditions of the Permit, with copies of all reports and other documents which

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Rognlin's, Inc. submits to Ecology regarding Rognlin's, Inc.'s coverage under the Permit at the Equipment Shop facility at the time these documents are submitted;

F.     Order Rognlin's, Inc. to take specific actions to remediate the environmental harm caused by its violations;

G.     Order Rognlin's, Inc. to pay civil penalties of $64,618 per day of violation for each violation committed by Rognlin's Inc., pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

H.     Award Twin Harbors its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

I.     Award such other relief as this Court deems appropriate.


RESPECTFULLY SUBMITTED this 6th day of September 2023

### Smith & Lowney, PLLC

By: *s/Marc Zemel*
Marc Zemel, WSBA #44325
By: *s/Meredith A. Crafton*
Meredith A. Crafton, WSBA #46558
By: *s/Savannah Rose*
Savannah Rose, WSBA #57062
Attorneys for Plaintiff
2317 E. John St.,
Seattle, WA 98112
Tel: (206) 860-2124
Fax: (206) 860-4187
E-mail: marc@smithandlowney.com,
savannah@smithandlowney.com, meredith@smithandlowney

COMPLAINT - 13

Exhibit 1

# SMITH & LOWNEY

— PLLC —

## ATTORNEYS AT LAW

June 1, 2023

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Rognlin's, Inc.
100 E River St.
Aberdeen, WA 98520

Managing Agent
Rognlin's, Inc.
321 W State St.
Aberdeen, WA 98520

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND
REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Twin Harbors Waterkeeper, P.O. Box 751, Cosmopolis, WA 98537, (206) 293-0574. Any response or correspondence related to this matter should be directed to us at the letterhead address. This letter is to provide you with sixty days' notice of Twin Harbors Waterkeeper's intent to file a citizen suit against Rognlin's, Inc.'s equipment shop, under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Rognlin's, Inc.'s equipment shop's National Pollution Discharge Elimination System ("NPDES") permit.

Rognlin's, Inc.'s equipment shop was granted coverage under the Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 1, 2020, set to expire on December 31, 2024 (the "Permit") under permit number: WAR311781.

Rognlin's, Inc.'s equipment shop has violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. § 1365(f)) including the terms and conditions of the Permit with respect to operations of, and discharges of stormwater and pollutants from its Equipment Shop (aka Maintenance Shop) facility located at or about 100 East River Street,



Aberdeen, WA 98520 as described herein, to the Chehalis River. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by Rognlin's, Inc.

## I.   COMPLIANCE WITH APPLICABLE STANDARDS

### A.  Compliance with Water Quality Standards

Condition S10.A of the Permit prohibits discharges that cause or contribute to violations of water quality standards. Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water. In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses. For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards. WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter."). Narrative water quality standards provide legal mandates that supplement the numeric criteria. Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard. Specifically, Condition S10.A of the Permit requires that Rognlin's, Inc.'s equipment shop's discharges not cause or contribute to an excursion of Washington State water quality standards.

Rognlin's, Inc.'s equipment shop discharges to the Chehalis River. Rognlin's, Inc.'s equipment shop discharges stormwater that may contain elevated levels of turbidity, pH, oil sheen, copper, and zinc. However, Rognlin's, Inc.'s equipment shop has failed to sample and analyze any of its stormwater discharges. These discharges cause and/or contribute to violations of water quality standards, in the Chehalis River, and have occurred each and every day for the last five years on which there was 0.1 inch or more of precipitation, and continue to occur. *See* WAC 173-201A-260 (including toxics and aesthetics criteria); WAC 173-201A-240 (toxic substances); WAC 173-201A-240 (including criteria for copper and zinc); WAC 173-201A-210 (including criteria for turbidity); and WAC 173-201A-200 (use designations for fresh water).

### B.   Compliance with AKART Standards

Condition S10.C of the Permit requires Rognlin's, Inc.'s equipment shop to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate SWPPP and best management practices ("BMPs"). Rognlin's, Inc.'s equipment shop has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs as described below in this Notice of Intent to Sue.

Condition S1.A of the Permit requires that all discharges and activities authorized be consistent with the terms and conditions of the Permit. Rognlin's, Inc.'s equipment shop has

violated these conditions by discharging and acting inconsistent with the conditions of the Permit as described in this Notice of Intent to Sue.

## II.      STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

Rognlin's, Inc.'s equipment shop is in violation of the Permit's SWPPP provisions as follows:

1. Condition S3.A of the Permit requires Rognlin's, Inc.'s equipment shop to develop and implement a SWPPP that contains specified components. Condition S3.A.1 of the 2020 Permit requires the SWPPP to specify BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards. Rognlin's, Inc.'s equipment shop has violated these requirements of the Permit each and every day for the last five years and continues to violate them as it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and BMPs necessary to comply with state water quality standards, as documented by the February 7, 2023 Inspection Report.

2. Condition S3.A of the Permit requires Rognlin's, Inc.'s equipment shop to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. Rognlin's, Inc.'s equipment shop has violated these requirements of the Permit each and every day for the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

3. The SWPPP fails to satisfy the requirements of Condition S3 of the Permit because it does not adequately describe BMPs. Condition S3.B.4 of the Permit requires that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A of the Permit requires that the SWPPP include BMPs consistent with approved stormwater technical manuals or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. *See Stormwater Management Manual for Western Washington*, July 2019, https://fortress.wa.gov/ecy/ezshare/wq/Permits/Flare/2019SWMMWW/Content/Resources/Docs ForDownload/2019SWMMWW.pdf. Rognlin's, Inc.'s equipment shop's SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

4. Rognlin's, Inc.'s equipment shop's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permit because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours, and seasonal variations in business hours or in industrial activities as required.

5. Rognlin's, Inc.'s equipment shop's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permit because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

6. Rognlin's, Inc.'s equipment shop's SWPPP fails to comply with Condition S3.B.2.b of the Permit because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of dry bulk materials or liquids, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

7. Rognlin's, Inc.'s equipment shop's SWPPP does not comply with Condition S3.B.2.c of the Permit because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

8. Rognlin's, Inc.'s equipment shop's SWPPP does not comply with Condition S3.B.3 of the Permit because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance, and modification.

9. Condition S3.B.4 of the Permit requires that permittees include in their SWPPPs and implement mandatory BMPs. Rognlin's, Inc.'s equipment shop is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permit.

10. Rognlin's, Inc.'s equipment shop's SWPPP does not comply with Condition S3.B.4.b.i of the Permit because it does not include required operational source control BMPs. Rognlin's, Inc.'s equipment shop fails to include operation source control BMPs in the following categories: good housekeeping (including the definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each

housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how Rognlin's, Inc.'s equipment shop will comply with signature and record retention requirements, and certification of compliance with the SWPPP and Permit). Some of the BMPs that Rognlin's, Inc.'s equipment shop is failing to implement, as evidenced by the facility's site map and photographic evidence, include:

- Failure to prevent turbid runoff from contaminating the surrounding area;
- Failure to control all on-site sources of dust and prevent track out;
- Failure to prevent debris from contaminating the surrounding area;
- Failure to prevent erosion and stabilize exposed soils on-site resulting in rills at the facility; and
- Failure to maintain the unpaved yard, such as adding a new layer of crushed rock or paving the yard.

11. Rognlin's, Inc.'s equipment shop's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permit because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers or surface waters and ground waters of the state, including failing to prevent solids from entering the stormwater and discharging off-site.

12. Rognlin's, Inc.'s equipment shop's SWPPP does not comply with Condition S3.B.4.b.ii of the Permit because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.

13. Rognlin's, Inc.'s equipment shop's SWPPP does not comply with Condition S3.B.4.b.iii of the Permit because it does not include treatment BMPs as required.

14. Rognlin's, Inc.'s equipment shop's SWPPP fails to comply with Condition S3.B.4.b.v of the Permit because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

15. Rognlin's, Inc.'s equipment shop's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permit because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that: identifies points of discharge to

surface waters, storm sewers, or discrete ground water infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantization levels, and analytical methods; and specifies the procedure for submitting the results to Ecology.

## III.    MONITORING AND REPORTING VIOLATIONS

### A.    Failure to Collect Quarterly Samples

Conditions S4.A and S4.B of the Permit require Rognlin's, Inc.'s equipment shop to collect and analyze a sample for all parameters of its stormwater discharge once during every calendar quarter. Rognlin's, Inc.'s equipment shop violated this requirement by failing to collect and analyze stormwater samples for Monitoring Point 1 (aka "middle catch basin") and Monitoring Point 2 (aka "K Street CB") during each and every quarter since fourth quarter 2022.

Condition S4.B.3.a of the 2020 Permit require Rognlin's, Inc.'s equipment shop to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled. These conditions set forth sample collection criteria but require the collection of a sample even if the criteria cannot be met. Rognlin's, Inc.'s equipment shop has multiple distinct points of discharge where stormwater is leaving the facility that it is not sampling and analyzing appropriately. There are other points of stormwater discharge from the facility and Rognlin's, Inc.'s equipment shop is in violation of these conditions of the Permit by failing to collect and analyze samples from them during every quarter since fourth quarter 2022.

### B.    Failure to Correctly and Timely Submit Discharge Monitoring Reports

Condition S9.B of the 2020 Permit require Rognlin's, Inc.'s equipment shop to use Discharge Monitoring Report ("DMR") forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology. For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period. Rognlin's, Inc.'s equipment shop has violated these conditions by failing to submit a DMR within the time prescribed for the fourth quarter 2022 and first quarter 2023.

### C.    Failure to Report Correct Sample Data on DMRs

Condition G20 of the Permit requires Rognlin's, Inc.'s equipment shop to promptly submit relevant facts in a permit application or in any report to Ecology when it becomes aware that it failed to submit such facts or information. Rognlin's, Inc.'s equipment shop has violated this condition each and every quarter since fourth quarter 2022 by submitting DMRs that report no discharge. To the extent that Rognlin's, Inc.'s equipment shop may assert that it was not previously aware of its failure to submit correct and accurate sample data on its DMRs, it has now been made so aware.

In addition, Rognlin's, Inc.'s equipment shop submitted an Electronic Submission Cover Letter with an attestation agreed to at signing for each and every DMR since fourth quarter 2022 that states, "I had the opportunity to review the content or meaning of the submittal before signing it; and to the best of my knowledge and belief, the information submitted is true, accurate, and complete. I intend to submit this information as part of the implementation, oversight, and enforcement of a federal environmental program. I am aware there are significant penalties for submitting false information, including possible fines and imprisonment." Rognlin's, Inc.'s equipment shop could be subject to significant criminal penalties for submitting false sample data.

### D.     Failure to Correctly Submit Annual Reports

S9.C of the 2020 Permit require Rognlin's, Inc.'s equipment shop to submit a complete and accurate Annual Report to Ecology no later than May 15th of each year. The Annual Report must include corrective action documentation as required in Condition S8.B–D of the Permit. If a corrective action is not yet completed at the time of submission of the Annual Report, Rognlin's, Inc.'s equipment shop must describe the status of any outstanding corrective action. Specific information to be included in the Annual Report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level One, Two, or Three Corrective Actions completed during the previous calendar year, including the dates corrective actions completed, and description of the status of any Level 2 or 3 Corrective Actions triggered during the previous calendar year, including identification of the date Rognlin's, Inc.'s equipment shop expects to complete corrective actions. Rognlin's, Inc.'s equipment shop has violated and continue to violate this condition by failing to submit an Annual Report for 2022.

### E.     Failure to Comply with Visual Monitoring Requirements

Condition S7.A of the Permit requires that a monthly visual inspection be conducted at the facility by qualified personnel. Condition S7.B of the Permit requires each inspection to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged; observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges; observations for the presence of illicit discharges; a verification that the descriptions of potential pollutant sources required by the permit are accurate; a verification that the site map in the SWPPP reflects current conditions; and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). Rognlin's, Inc.'s equipment shop has violated and continues to violate these requirements because, since fourth quarter 2022, it has failed to conduct each of the requisite visual monitoring and inspections each and every month.

Condition S7.C of the Permit requires that Rognlin's, Inc.'s equipment shop record the results of each inspection in an inspection report or checklist that is maintained on-site and documents the observations, verifications, and assessments required. The report/checklist must include the time and date of the inspection; the locations inspected; a statement that, in the

judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permit; a summary report and schedule of implementation of the remedial actions Rognlin's, Inc.'s equipment shop plans to take if the site inspection indicates that the facility is out of compliance; the name, title, signature and certification of the person conducting the facility inspection; and a certification and signature of the responsible corporate officer or a duly authorized representative. Rognlin's, Inc.'s equipment shop is in violation of these requirements because, since fourth quarter 2022, it failed to prepare and maintain the requisite inspection reports or checklists and failed to make the requisite certifications and summaries.

## IV.    VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A.    Failure to Record Information

Condition S4.B of the Permit requires Rognlin's, Inc.'s equipment shop record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Rognlin's, Inc.'s equipment shop collected the sample within the first 30 minutes of stormwater discharge event, an explanation of why Rognlin's, Inc.'s equipment shop could not collect a sample within the first 30 minutes of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. Rognlin's, Inc.'s equipment shop is in violation of these conditions as it has not recorded each of these specified items for each sample taken since fourth quarter 2022.

### B.    Failure to Retain Records

S9.D of the 2020 Permit require Rognlin's, Inc.'s equipment shop to retain for a minimum of five years a copy of the current Permit, a copy of Rognlin's, Inc.'s equipment shop's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. Rognlin's, Inc.'s equipment shop is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation since fourth quarter 2022.

## V.    FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.F of the 2020 Permit require Rognlin's, Inc.'s equipment shop to take certain actions in the event it is unable to comply with any of the terms and conditions of the Permit which may endanger human health or the environment or exceed any numeric effluent limitation in the permit. In such circumstances, Rognlin's, Inc.'s equipment shop must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and Rognlin's, Inc.'s equipment shop must immediately notify the appropriate Ecology regional office of the failure to comply. Rognlin's, Inc.'s equipment shop must then submit a detailed written report to Ecology, including specified details, within 5 days

of the time Rognlin's, Inc.'s equipment shop became aware of the circumstances unless Ecology requests an earlier submission.

Rognlin's, Inc.'s equipment shop routinely violates these requirements, including each and every time it failed to comply with any of the terms and conditions of the Permit which may endanger human health or the environment.

## VI.   REQUEST FOR SWPPP

<u>Pursuant to Condition S9.G of the 2020 Permit</u>, Twin Harbors Waterkeeper <u>hereby requests that Rognlin's, Inc.'s equipment shop provide a copy of, or access to, its SWPPP</u> complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Rognlin's, Inc.'s equipment shop fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the 2020 Permit, it will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any ensuing lawsuit.

## VII.   CONCLUSION

The above-described violations reflect those indicated by the information currently available to Twin Harbors Waterkeeper. These violations are ongoing. Twin Harbors Waterkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Sections 309(g)(2)(A) and 404(s)(4) of the CWA, 33 U.S.C. §§ 1319(d) and 1344(s)(4), each of the above-described violations subjects the violator to a penalty of up to $64,618 per day for each violation. In addition to civil penalties, Twin Harbors Waterkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Twin Harbors Waterkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Rognlin's, Inc.'s equipment shop under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

**Sᴍɪᴛʜ & Lᴏᴡɴᴇʏ, PLLC**

By: _s/Savannah Rose_
Savannah Rose
Richard A. Smith

cc:    Michael Regan, Administrator, U.S. EPA
       Casey Sixkiller, Region 10 Administrator, U.S. EPA
       Laura Watson, Director, Washington Department of Ecology